UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------
CHRISTOPHER TABICK
on behalf of himself and
all other similarly situated consumers

                                    Plaintiff,


            -against-


FCI LENDER SERVICES, INC.

                                    Defendant.

-----------------------------------------------------------

## CLASS ACTION COMPLAINT

### *Introduction*

1.    Plaintiff Christopher Tabick seeks redress for the illegal practices of FCI Lender

Services, Inc., concerning the collection of debts, in violation of the Fair Debt Collection

Practices Act, 15 U.S.C. § 1692, et *seq.* ("FDCPA").

### *Parties*

2.    Plaintiff is a citizen of the State of New York who resides within this District.

3.    Plaintiff is a consumer as that term is defined by Section 1692(a)(3) of the FDCPA, in

that the alleged debt that Defendant sought to collect from Plaintiff is a consumer debt.

4.    Upon information and belief, Defendant's principal place of business is located in

Anaheim, California.

5.    Defendant is regularly engaged, for profit, in the collection of debts allegedly owed by

consumers.

6.    Defendant is a "debt collector" as that term is defined by the FDCPA, 15 U.S.C. §

1692(a)(6).

### *Jurisdiction and Venue*

7.  This Court has federal question jurisdiction under 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331.

8.  Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), as the acts and transactions that give rise to this action occurred, in substantial part, in this district.

### *Allegations Particular to Christopher Tabick*

9.  Plaintiff took out a home loan with *2005 Residential Trust 3-1*.

10. *2005 Residential Trust 3-1* hired Defendant Real Time Solutions, Inc., and then ultimately transferred the Promissory Note to Defendant FCI to collect on that loan.

11. The Loan Number was 9160013032.

12. The said loan went into default before FCI Lender Services, Inc. obtained it for collection.

13. On or about June 6, 2017 Defendant sent the Plaintiff a collection letter, seeking to collect the time-barred debt of $183,942.08.

14. The letter stated the "Principal Balance" as $125,325.45 and "Accrued Interest" as $58,616.63.

15. Said letter further stated as follows: "As of the date of this Notice, the Debt is **$183,942.08**. Because of interest, late charges and other charges that may vary from day to day, the amount due on the day you pay may be greater.  Hence, if you pay the amount shown above, an adjustment may be necessary after we receive you check, in which event we will inform you before depositing the check for collection."

16. Despite the fact that interest has been waived on the said account, and despite the fact that at the beginning of the said letter it was stated that "The serving of your Promissory

Note was transferred, effective 06/01/2017. This means that as of this date, a new Servicer is collecting your Promissory Note payments from you. **Nothing else about your Promissory Note has changed.**" (emphasis added), the Defendant nevertheless engaged in the collection of an illegal interest rate and balance.

17.    Real Time Solutions, Inc. sent plaintiff multiple letters which showed the debt as static.

18.    Real Time Solutions, Inc. sent plaintiff multiple letters which showed the debt at a 0.00% interest.

19.    Real Time Solutions, Inc. informed Plaintiff on multiple occasions that the interest had been waived.

20.    Real Time Solutions, Inc. informed Plaintiff on multiple occasions that the total amount due at Charge-off was $125,325.45. and that the total amount of interest that accrued since charge-off was $0.00

21.    *2005 Residential Trust 3-1*, the Creditor of this debt, had waived the right to collect interest.  Defendant FCI's attempt to collect interest on the account after all interest was waived and after the interest rate went to 0.00%, violated the Fair Debt Collection Practices Act ("FDCPA").

22.    Defendant FCI's attempted to collect interest that was already waived in violation of the FDCPA. *See Terech v. First Resolution Mgmt. Corp.*, 854 F. Supp. 2d 537 (N.D. Ill. 2012). (holding that plaintiff stated a claim under FDCPA by alleging that the creditor did not impose interest prior to the transfer to third party debt collection company).

23.    The Creditor and the previous Servicer of the said loan, Real Time Solutions, Inc., took the decisive and unequivocal action to forgo the imposition of interest for strategic business reasons among other reasons.

24.     This practice also permitted the Creditor *2005 Residential Trust 3-1*, and Servicer's to remove the account from the financial records and receive a bad debt tax deduction. See I.R.C. § 166(a)(2).

25.     This tradeoff leads to the reasonable understanding that the Creditor *2005 Residential Trust 3-1* intended to waive interest.

26.     Both Real Time and *2005 Residential Trust 3-1*, knowingly and intentionally waived their right to interest and then transferred the 0.00% interest accruing account in order to take advantage of favorable accounting practices.

27.     Because Real Time and the Creditor, waived the interest, Defendant FCI could not retroactively impose interest for the period in which it did not service the accounts.

28.     Defendant FCI could not start to charge interest on an account that had a 0.00% interest rate.

29.     Defendant FCI is in violation of the FDCPA for trying to create a monetary interest out of thin air.  Undoubtedly, Defendant FCI could not impose interest for the period prior to its servicing of this account especially if the Creditor, and previous servicer Real Time never imposed interest itself.  In this circumstance, no such right to impose interest could ever have existed.

30.     The Creditor, and Real Time implicitly waived interest on Plaintiff's account that Defendant FCI could not lawfully re-impose.

31.     Defendant FCI unlawfully sought to collect interest that Real Time and the Creditor had knowingly waived, which was both deceptive under §1692e and unfair in violation of §1692f.

32. Defendant FCI misrepresented its legal entitlement to collect waived interest, which misrepresented the amount of debt, in violation of § 1692e.

33. Defendant FCI attempted the collection of an amount which included interest that was not expressly authorized by the agreement creating the debt nor was it permitted by law." 15 U.S.C. §1692f(1)

34. The Creditor, and Real Time took voluntary actions demonstrating an intention to waive past and future interest charges. See. *Bunce v. Portfolio Recovery Assocs., LLC*, 2014 U.S. Dist. LEXIS 159679 (D. Kan. Nov. 12, 2014). (Recognizing that in cases where the creditors took voluntary actions demonstrating an intention to waive interest charges collection of such amounts after waiver would violate the FDCPA)

35. Defendant FCI had neither a contractual, nor a statutory, right to claim that interest may or was accruing and could continue to accumulate on the debt.

36. By falsely adding interest to the amount of the debt, Defendant FCI made materially false statements, in violation of 15 U.S.C. § 1692e of the FDCPA.

37. The law of New York has long held that a waiver is the voluntary relinquishment of a right. *Cowenhoven v. Ball,* 118 N.Y. 231 (N.Y. 1890)

38. Waiver can be express or implied. An express waiver will be written or oral. An implied waiver is more difficult to prove. An implied waiver may be done "by acts from which an intention to waive may be inferred or from which a waiver follows as a legal result." *Titus v. Glens Falls Ins. Co.*, 81 N.Y. 410 (N.Y. 1880).

39. Black's Law Dictionary (9th ed) defines implied waiver as a "…waiver of contractual rights…where the conduct or acts of the party charged with waiver have either: (1) clearly manifested an intention to waive the contract provision or term allegedly waived

or (2) reasonably induced the non-waiving party to rely upon an apparent waiver or such term or provision".

40. Defendant FCI, continued to pursue post-waiver interest on the time barred charged off debt.

41. Defendant FCI violated sections §1692e and §1692f of the FDCPA for falsely representing the amount of the time-barred debt, using unfair and unconscionable means to collect the debt, and for threatening to take action which cannot legally be taken.

42. Real Time clearly evinced the Creditor's intention to waive the right to charge interest, the Defendant FCI violated the FDCPA by charging unauthorized interest after Real Time, had already stated that the Creditor, waived its right to do so.

43. Defendant FCI, by charging interest on amount of the debt, where it had neither a contractual, nor a statutory, right to do so, used unfair or unconscionable means to collect a debt, in violation of § 1692f of the FDCPA.

44. Defendant's violations of § 1692f of the FDCPA render it liable for statutory damages, costs, and reasonable attorneys' fees.  See, 15 U.S.C. §1692k.

45. Defendant attempted to collect interest on a debt when it was not entitled to do so.

46. Defendant's conduct was deceptive and misleading in violation of 15 U.S.C. § 1692e.

47. Defendant's conduct was also unfair and unconscionable in violation of 15 U.S.C. § 1692f.

48. Defendant's conduct was further in violation of 15 U.S.C. § 1692g(a)(1) for failing to accurately provide the consumer with the actual amount of the debt.

49. Defendant's allegation in said letter, that interest was owed was false and misleading.

50.    The Defendant had no right to collect any such interest from the Plaintiff.[1]

51.    Defendant violated 15 U.S.C. §§ 1692e(2)(A), 1692e(10), 1692f and 1692g(a)(1) for charging interest on the time-barred account when it was not authorized to do so.

52.    Upon information and belief, the said June 6, 2017 letter was the Defendant's initial communication with the Plaintiff.

53.    15 U.S.C. § 1692g provides that within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing certain enumerated information.

54.    One such requirement is that the debt collector provide "the amount of the debt." 15 U.S.C. § 1692g(a)(1).

55.    A debt collector has the obligation not just to convey the amount of the debt, but to convey such clearly.

56.    15 U.S.C. § 1692e prohibits a debt collector from using any false, deceptive, or misleading representation or means in connection with the collection of any debt.

57.    The question of whether a collection letter is deceptive is determined from the perspective of the "least sophisticated consumer."

58.    While § 1692e specifically prohibits certain practices, the list is non-exhaustive, and does not preclude a claim of falsity or deception based on any non-enumerated practice.

---

[1]*McDonald v. Asset Acceptance LLC,* No. 2: 11-cv-13080 (E.D. Mich. Aug. 7, 2013). ("Asset purchased the debts subject to the waiver, thereby precluding Asset from imposing interest or revoking the original creditors' waiver. As such, Asset's false statements regarding the total amount of the debt in the collection actions constitutes violations of § 1692e(2)(A) and § 1692f(1)."), *Stratton v. Portfolio Recovery* ([The Defendant] as [the Creditor's] assignee, moreover, "acquire[d] no greater right than was possessed by [its] assignor . . . but simply stands in the shoes of the latter." *McDonald v. Richard J. Boudreau & Assocs., L.L.C.*, 2013 WL 3479273 (D.R.I. July 10, 2013). (Where a consumer can show that the creditor waived its right charge interest and the debt collector subsequently charged interest any such action would be a claim for misrepresenting the amount due in violation of the FDCPA) *Duffy v. Landberg*, 215 F.3d 871 (8th Cir.), *rehearing denied*, 2000 U.S. App. LEXIS 16039 (8th Cir. July 10, 2000). (Attempts to collect very small interest overcharges violated the plain language of § 1692f(1).) *Venes v. Prof'l Serv. Bureau, Inc*., 353 N.W.2d 671 (Minn. Ct. App. 1984). (The collector/assignee violated § 1692f by charging interest on a debt to the Mayo Clinic which had a policy of not charging its patients interest.)

59.    A collection letter is deceptive under 15 U.S.C. § 1692e if it can reasonably be read by the least sophisticated consumer to have two or more meanings, one of which is inaccurate.

60.    A collection letter is also deceptive under 15 U.S.C. § 1692e if it is reasonably susceptible to an inaccurate reading by the least sophisticated consumer.

61.    The letter fails to inform Plaintiff whether the amount listed is the actual amount of the debt due.

62.    The letter fails to inform Plaintiff whether the amount listed already includes "accrued interest."

63.    As quoted in paragraph 14 of this complaint, the said letter threatens "interest, late charges, and other charges that may vary from day to day[.]"

64.    The letter fails to inform Plaintiff whether the amount listed already includes "other charges."

65.    The letter fails to advise Plaintiff what portion of the amount listed is principal.

66.    The letter fails to inform Plaintiff whether the amount listed will increase.

67.    The letter fails to inform Plaintiff what "other charges" might apply.

68.    The letter fails to inform Plaintiff if "other charges" are applied, when such "other charges" will be applied.

69.    The letter fails to inform Plaintiff if "other charges" are applied, what the amount of those "other charges" will be.

70.    The letter fails to inform Plaintiff of the nature of the "other charges."

71.    The letter fails to inform Plaintiff if there is "accrued interest," what the amount of the accrued interest will be.

72.    The letter fails to inform Plaintiff if there is "accrued interest," when such interest will be applied.

73.    The letter fails to inform Plaintiff if there is "accrued interest," what the interest rate is.

74.    The letter fails to inform Plaintiff if there is "accrued interest," the amount of money the amount listed will increase per day.

75.    The letter fails to inform Plaintiff if there is "accrued interest," the amount of money the amount listed will increase per week.

76.    The letter fails to inform Plaintiff if there is "accrued interest," the amount of money the amount listed will increase per month.

77.    The letter fails to inform Plaintiff if there is "accrued interest," the amount of money the amount listed will increase per any measurable period.

78.    The letter, because of the aforementioned failures, would render the least sophisticated consumer unable to determine the amount of his or her debt.

79.    The sophisticated consumer could reasonably believe that the debt could be satisfied by remitting the listed amount "as of the date of this Notice," at any time after receipt of the letter.

80.    The sophisticated consumer could reasonably believe that the amount listed was accurate only on the date of the letter.

81.    If interest is continuing to accrue, the least sophisticated consumer would not know the amount of the debt because the letter fails to indicate the applicable interest rate.

82.    If interest is continuing to accrue, the least sophisticated consumer would not know the amount of the debt because the letter fails to indicate what the amount of the accrued interest will be.

83. If interest is continuing to accrue, the least sophisticated consumer would not know the amount of the debt because the letter fails to indicate when such interest will be applied.

84. If interest is continuing to accrue, the least sophisticated consumer would not know the amount of the debt because the letter fails to indicate the amount of money the amount listed will increase at any measurable period.

85. If "other charges" are continuing to accrue, the least sophisticated consumer would not know the amount of the debt because the letter fails to indicate the nature of the "other charges."[2]

86. The letter fails to advise Plaintiff that if Plaintiff pays the amount listed, an adjustment may be necessary after Defendant receives payment.

87. The letter fails to advise Plaintiff that if Plaintiff pays the amount listed, Defendant will inform Plaintiff of the balance difference before depositing payment.

88. The Defendant's failures are purposeful.

89. In order to induce payments from consumers that would not otherwise be made if the consumer knew the true amount due, Defendant does not inform the consumer whether the amount listed will increase.

90. In order to induce payments from consumers that would not otherwise be made if the consumer knew the true amount due, Defendant does not inform the consumer what "other charges" might apply.

91. In order to induce payments from consumers that would not otherwise be made if the

---

[2] Carlin v. Davidson Fink LLP, 852 F.3d 207 (2d Cir. 2017), Balke v. All. One Receivables Mgmt., No. 16-cv-5624(ADS)(AKT), 2017 U.S. Dist. LEXIS 94021, at *14 (E.D.N.Y. June 19, 2017). ("[T]he Collection Letter in this case refers with vagueness to "accrued interest or other charges," without providing any information regarding the rate of interest; the nature of the "other charges"; how any such charges would be calculated; and what portion of the balance due, if any, reflects already-accrued interest and other charges. By failing to provide even the most basic level of specificity in this regard, the Court "cannot say whether those amounts are properly part of the amount of the debt," for purposes of section 1692g.Carlin, 852 F.3d at 216. Further, as set forth in Carlin, without any clarifying details, the Collection Letter states only that these unspecified assessments may be added to the balance due, which the Court finds to be insufficient to "accurately inform[ ] the [Plaintiff] that the amount of the debt stated in the letter will increase over time.")

consumer knew the true amount due, Defendant does not inform the consumer when such "other charges" will be applied.

92.    Defendant failed to clearly and unambiguously state the amount of the debt, in violation of 15 U.S.C. § 1692g(a)(1).

93.    The Defendant's letter would likely make the least sophisticated consumer uncertain as to the amount of the debt, in violation of 15 U.S.C. § 1692g(a)(1).

94.    The letter would likely make the least sophisticated consumer confused as to the amount of the debt, in violation of 15 U.S.C. § 1692g(a)(1).

95.    Defendant's conduct constitutes a false, deceptive and misleading means and representation in connection with the collection of the debt, in violation of 15 U.S.C. § 1692e.

96.    The letter can reasonably be read by the least sophisticated consumer to have two or more meanings concerning the actual balance due, one of which must is inaccurate, in violation of 15 U.S.C. § 1692e.

97.    Defendant's conduct violated 15 U.S.C. §§ 1692g(a)(1) and 1692e.

98.    Plaintiff suffered injury in fact by being subjected to unfair and abusive practices of the Defendant.

99.    Plaintiff suffered actual harm by being the target of the Defendant's misleading debt collection communications.

100.    Defendant violated the Plaintiff's right not to be the target of misleading debt collection communications.

101.    Defendant violated the Plaintiff's right to a truthful and fair debt collection process.

102.    Defendant used materially false, deceptive, misleading representations and means in its

attempted collection of Plaintiff's alleged debt.

103. Defendant's communications were designed to cause the debtor to suffer a harmful disadvantage in charting a course of action in response to Defendant's collection efforts.

104. The FDCPA ensures that consumers are fully and truthfully apprised of the facts and of their rights, the act enables them to understand, make informed decisions about, and participate fully and meaningfully in the debt collection process. The purpose of the FDCPA is to provide information that helps consumers to choose intelligently. The Defendant's false representations misled the Plaintiff in a manner that deprived him of his right to enjoy these benefits, these materially misleading statements trigger liability under section 1692e of the Act.

105. These deceptive communications additionally violated the FDCPA since they frustrate the consumer's ability to intelligently choose his or her response.

106. As an actual and proximate result of the acts and omissions of Defendant, Plaintiff has suffered including but not limited to, fear, stress, mental anguish, emotional stress and acute embarrassment for which she should be compensated in an amount to be established by a jury at trial.

### AS AND FOR A FIRST CAUSE OF ACTION

*Violations of the Fair Debt Collection Practices Act brought by Plaintiff on behalf of himself and the members of a class, as against the Defendant.*

107. Plaintiff re-states, re-alleges, and incorporates herein by reference, paragraphs one (1) through one hundred and six (106) as if set forth fully in this cause of action.

108. This cause of action is brought on behalf of Plaintiff and the members of two classes.

109. Class A consists of (a) all individuals who have mailing addresses within the State of New York; (b) who within one year before the filing of this action; (c) were sent a

collection letter in a form materially identical or substantially similar to the form letter sent by the Defendant to the Plaintiff; (d) regarding a debt which imposed interest when it was unlawful to do so, and (e) which was not returned by the postal service as undelivered; and (f) the Plaintiff asserts that the letter contained violations of 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(10), 1692f and 1692g(a)(1).

110. Class B consists of all persons whom Defendant's records reflect resided in the State of New York and who were sent a collection letter in substantially the same form letter as the letter sent to Plaintiff on or about June 6, 2017; and (a) the collection letter was sent to a consumer seeking payment of a personal debt; and (b) the collection letter was returned by the postal service as undelivered; (c) and Plaintiff asserts that the letter contained violations of 15 U.S.C. §§ 1692e and 1692g(a)(1) for the use of any false representation or deceptive means to collect or attempt to collect any debt, for misrepresenting the amount of the debt owed by Plaintiff and for failing to accurately state the amount of the debt in the initial communication.

111. Pursuant to Federal Rule of Civil Procedure 23, a class action is appropriate and preferable in this case because:

    A. Based on the fact that a form collection letter is at the heart of this litigation, the classes are so numerous that joinder of all members is impracticable.

    B. There are questions of law and fact common to the classes and these questions predominate over any questions affecting only individual class members. The principal question presented by this claim is whether the Defendant violated the FDCPA.

C. The only individual issue is the identification of the consumers who received such collection letters (*i.e.* the class members), a matter capable of ministerial determination from the records of Defendant.

D. The claims of the Plaintiff are typical of those of the class members. All are based on the same facts and legal theories.

E. The Plaintiff will fairly and adequately represent the class members' interests. The Plaintiff has retained counsel experienced in bringing class actions and collection-abuse claims. The Plaintiff's interests are consistent with those of the members of the class.

112.  A class action is superior for the fair and efficient adjudication of the class members' claims. Congress specifically envisions class actions as a principal means of enforcing the FDCPA. 15 U.S.C. § 1692(k). The members of the class are generally unsophisticated individuals, whose rights will not be vindicated in the absence of a class action. Prosecution of separate actions by individual members of the classes would create the risk of inconsistent or varying adjudications resulting in the establishment of inconsistent or varying standards for the parties and would not be in the interest of judicial economy.

113.  If the facts are discovered to be appropriate, the Plaintiff will seek to certify a class pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure.

114.  Collection attempts, such as those made by the Defendant are to be evaluated by the objective standard of the hypothetical "least sophisticated consumer."

*Violations of the Fair Debt Collection Practices Act*

115.    The Defendant's actions as set forth above in the within complaint violates the Fair Debt Collection Practices Act.

116.    Because the Defendant violated the Fair Debt Collection Practices Act, the Plaintiff and the members of the class are entitled to damages in accordance with the Fair Debt Collection Practices Act.

WHEREFORE, Plaintiff, respectfully requests preliminary and permanent injunctive relief, and that this Court enter judgment in his favor and against the Defendant and award damages as follows:

    A.  Statutory damages provided under the FDCPA, 15 U.S.C. § 1692(k);

    B.  Attorney fees, litigation expenses and costs incurred in bringing this action; and

    C.  Any other relief that this Court deems appropriate and just under the circumstances.

Dated: Woodmere, New York
July 19, 2017


\_\_\_\_\_/s/ Adam J. Fishbein_____
Adam J. Fishbein, P.C.  (AF-9508)
Attorney At Law
**Attorney for the Plaintiff**
735 Central Avenue
Woodmere, New York 11598
Telephone: (516) 668-6945
Email: fishbeinadamj@gmail.com


Plaintiff requests trial by jury on all issues so triable.


\_\_\_\_\_/s/ Adam J. Fishbein\_\_\_\_
Adam J. Fishbein (AF-9508)



Dept. 107565
PO Box 1259
Oaks, PA 19456
Return Mail Only - No Correspondence

REAL TIME RESOLUTIONS

| | |
|---|---|
| Original Account Number: 89738472 | |
| Date of Last Payment: | Mar 1 2010 |
| Payoff as of 01-21-2017: | $125,325.45 |

Payoff Itemization:
| | |
|---|---|
| Principal Balance: | $125,325.45 |
| Interest Balance: | $0.00 |
| Fee Balance: | $0.00 |
| Misc Balance: | $0.00 |

CHRISTOPHER J TABICK
89 BAY 23RD ST
BROOKLYN NY 11214-3807

000001

01-21-2017

**REAL TIME RESOLUTIONS, INC.** File: **0087894246**

**Regarding Property:**     4107 5TH AVE
                           HOLMES BEACH, FL 34217

RE: **Notice of Servicing Transfer**

Dear CHRISTOPHER J TABICK:

You are hereby notified that collection duty associated with the above referenced file, that is the right to collect payments from you, if applicable, is being transferred from Ditech Financial, LLC. to Real Time Resolutions, Inc. ("RTR"), effective Jan 9 2017. This transfer of collection rights associated with your account does not affect any terms or conditions of your contract documentation other than the terms directly related to the collection of your payments.

---

| Please see the back of this page and the next page for additional important information regarding this account. |
|---|

Real Time Resolutions, Inc. is a debt collector. This is an attempt to collect a debt, and any information obtained will be used for that purpose. However, if you are currently in bankruptcy or have received a discharge in bankruptcy, this communication is not an attempt to collect a debt from you personally to the extent it is included in your bankruptcy or has been discharged and is provided for informational purposes only.

**NEW YORK RESIDENTS:**
- New York City Department of Consumer Affairs License Number: 1077970.
- Original Creditor: CW HOME EQUITY (CWHEQ 2005-A)
- Total Due at Charge-Off: $125,000.00
- Total Interest Since Charge-Off: $0.00
- Total Non-Interest Charges or Fees Since Charge-Off: $0.00
- Total Payments Made Since Charge-Off: $0.00

As of today, we show your total loan balance as $125,325.45. Any questions regarding this loan may be directed to Charles Rich by calling 1-855-879-7871.

Debt collectors, in accordance with the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq., are prohibited from engaging in abusive, deceptive, and unfair debt collection efforts, including but not limited to (i) the use or threat of violence; (ii) the use of obscene or profane language; and (iii) repeated phone calls made with the intent to annoy, abuse, or harass. If a creditor or debt collector receives a money judgment against you in court, state and federal laws may prevent the following types of income from being taken to pay the debt:

1. Supplemental security income (SSI);
2. Social security;
3. Public assistance (welfare);
4. Spousal support, maintenance (alimony), or child support;
5. Unemployment benefits;
6. Disability benefits;
7. Workers' compensation benefits;
8. Public or private pensions;
9. Veterans' benefits;
10. Federal student loans, federal student grants, and federal work study funds; and
11. Ninety percent of your wages or salary earned in the last sixty days.

**ALL U.S. RESIDENTS:**
If you would like mortgage counseling or assistance, you can find a list of counselors in your area by calling the U.S. Department of Housing and Urban Development at 1-800-569-4287 or visiting their website at www.hud.gov.

**This communication is from a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose.**

- **This Account's Current Creditor is THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS SUCCESSOR TO JPMORGAN CHASE BANK, N.A., AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWHEQ REVOLVING HOME EQUITY LOAN TRUST, SERIES 2005-A**
- **This Account's Original Creditor is CW HOME EQUITY (CWHEQ 2005-A)**


**REAL TIME**
R E S O L U T I O N S.

01-21-2017

File Number: 0087894246

Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days of receiving this notice, this office will obtain verification of the debt or obtain a copy of a judgment if applicable and mail you a copy of such verification or judgment. If you make a written request to this office within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

If you have mortgage life, disability, or any other type of optional insurance, please note that these types of insurance will NOT remain a part of your monthly payment, and you will need to make arrangements to pay the premium(s) for these services directly to the insurer to prevent cancellation.

Under federal law, during the 60-day period following the effective date of the transfer of account servicing, a payment received by your prior servicer on or before its due date may not be treated by RTR as late, and we may not impose a late fee in connection with such payment.

Effective Jan 9 2017, Ditech Financial, LLC. will not accept payments, correspondence, or calls from you about your account. If you are currently making your mortgage payment through preauthorized draft with Ditech Financial, LLC., please be advised that after Jan 9 2017 that service will be CANCELLED. Ditech Financial, LLC. can be reached at 1-877-835-6465 Mon - Thu 6:00am - 7:00pm, Fri 6:00am - 4:00pm Mountain.

Effective Jan 9 2017, your correspondence and payments made payable to Real Time Resolutions, Inc. should be directed to the following addresses:

<u>Correspondence</u>
REAL TIME RESOLUTIONS, INC.
P.O. Box 36655
Dallas, TX 75235-1655

<u>Payments</u>
REAL TIME RESOLUTIONS, INC.
Attn: Payment Processing
P.O. BOX 731940
DALLAS, TX 75373-1940

If you would like to contact us at any time about your loan, you may call us toll free at 1-855-879-7871 between the hours of Mon - Thu 7:00am - 9:00pm, Fri 7:00am - 6:00pm Central.

Sincerely,

REAL TIME RESOLUTIONS, INC.
P.O. Box 36655
Dallas, TX 75235-1655
Toll Free: 1-855-879-7871

1349 Empire Central Dr. Suite 150 Dallas, TX 75247-4029
Toll Free Customer Service 1-855-879-7871
Corporate Office Hours: Monday - Friday 8:30AM - 5:30PM Central • realtimeresolutions.com/make-a-payment

126833-70021-2

**FCI**

*Loan Servicing • Specialty Servicing • Default*

Phone: 800-931-2424   Fax: 714-282-5775

06/06/2017

## NOTICE OF SERVICING TRANSFER

CHRISTOPHER J TABICK
89 BAY 23RD ST
BROOKLYN, NY 11214

**Loan #: 9160013032**
**Property: 4107 5TH AVE**
**HOLMES BEACH, FL 34217**

Dear CHRISTOPHER J TABICK:

The servicing of your Promissory Note was transferred, effective 06/01/2017. This means that as of this date, a new Servicer is collecting your Promissory Note payments from you. Nothing else about your Promissory Note has change.

FCI Lender Services is now collecting your payments. Real Time Resolutions, Inc stopped accepting payments received from you on 06/01/2017. FCI Lender Services, Inc. began accepting payments from you on 06/01/2017.

**Send all payments due on or after 06/01/2017 to FCI Lender Services Inc. at this address: PO BOX 27370, Anaheim, CA 92809-0112.**

If you have any questions for either your prior servicer, Real Time Resolutions, Inc, or your new Servicer FCI Lender Services, Inc. about your Promissory Note or this transfer, please contact them using the information below:

| **Previous Servicer** | **Current Servicer:** |
|---|---|
| Real Time Resolutions, Inc | FCI Lender Services, Inc. |
| Customer Service | Customer Care Department |
| PO Box 35888 | Post Office Box 27370 |
| DALLAS, TX, 75235 | Anaheim, California 92809-0112 |
| (877) 469-7325 (toll free or collect) | (800) 931-2424, x651 (toll free) |
| Hours of Operation: | Hours of Operation |
| Monday - Friday | Monday – Friday |
| 07:00 AM - 09:00 PM (Central Standard Time) | 08:00 AM – 05:00 PM (Pacific) |

Important Note about insurance: If you have mortgage life or disability insurance or any other type of optional insurance, the transfer of servicing rights may not affect your insurance because we have not serviced mortgage life or disability premiums. However, if you wish to retain optional insurance, we would suggest that you contact your current optional product service provider or your Lender.

Under Federal law, during the 60-day period following the effective date of the transfer of the loan servicing, a loan payment received by your old Servicer on or before its due date may not be treated by the new Servicer as late, and a late fee may not be imposed on you.

Sincerely,
Customer Care Department
FCI Lender Services

**FCI Lender Services, Inc.**

*Loan Servicing • Specialty Servicing • Default*

Phone: 800-931-2424    Fax: 714-282-5775

06/06/2017

## BORROWER WELCOME LETTER

CHRISTOPHER J TABICK
89 BAY 23RD ST
BROOKLYN, NY 11214

**Re Loan Number: 9160013032**
**Property: 4107 5TH AVE, HOLMES BEACH, FL 34217**

Dear CHRISTOPHER J TABICK:

**Welcome to FCI Lender Services, Inc. ("FCI") Loan servicing!** FCI is your Servicing Agent and is servicing your Promissory Note on behalf of your Lender/Creditor, **2005 Residential Trust 3-1 (The "Creditor")**. FCI is also a Debt Collector. Your Creditor has authorized FCI to process and collect your scheduled Promissory Note payments according to your Promissory Note and Security Instrument. A *Payment Statement* will be mailed or emailed to you on a regular basis. Please send your check with your account number written on it, plus the payment coupon from your statement (unless you have established an Automated Payments (ACH) debit program with FCI). You should review each *Payment Statement* carefully for accurate loan information. At year-end, an interest statement (IRS Form 1098) will be mailed to you for tax purposes. To view your account, and for other payment options, visit www.trustfci.com and click on "Borrower Payment Options" located at the top of FCI's web page.

### IMPORTANT BANKRUPTCY INFORMATION
**IF YOU OR YOUR ACCOUNT ARE SUBJECT TO PENDING BANKRUPTCY PROCEEDINGS, OR IF YOU RECEIVED A BANKRUPTCY DISCHARGE ON THIS DEBT, THIS STATEMENT IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT AN ATTEMPT TO COLLECT A DEBT.**

Your Creditor has provided FCI the following information regarding the Total Amount Due on your Promissory Note (the "Debt").

| | | | |
|---|---|---|---|
| Deferred Principal Balance: | $ 0.00 | Principal Balance: | $ 125,325.45 |
| Deferred Unpaid Interest: | $ 0.00 | Accrued Interest: | $ 58,616.63 |
| Deferred Late Charges: | $ 0.00 | Accrued Late Charges: | $ 0.00 |
| Deferred Loan Charges: | $ 0.00 | Other Amounts Due: | $ 0.00 |
| | **Amount of Debt:** | **$ 183,942.08** | |

**VALIDATION OF DEBT:** Unless you, the consumer, within thirty days after receipt of this notice, dispute the validity of the Debt, or any portion thereof, the Debt will be assumed to be valid by FCI as the Debt Collector. If you notify FCI in writing, within thirty days after receipt of this notice, that you dispute the Debt or any portion of the Debt, we will, as required by law, obtain and mail to you verification of the Debt and/or a copy of a Judgment against you. Upon your written request within the thirty-day period, FCI as the Debt Collector will provide you, as the consumer, with the name and address of the original creditor, if different from the current Creditor.

As of the date of this Notice, the Debt is **$ 183,942.08.** Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you before depositing the check for collection.

**PLEASE BE ADVISED YOUR LOAN TERMS MAY BE ADJUSTED ONCE ALL LOAN DOCUMENTS HAVE BEEN RECEIVED AND/OR REVIEWED.**

**IF YOU ARE NOT IN BANKRUPTCY OR DISCHARGED OF THIS DEBT, BE ADVISED THAT FCI IS A DEBT COLLECTOR AND IS ATTEMPTING TO COLLECT A DEBT ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

If you have any questions regarding the above information, please write or call FCI's Customer Care Center toll-free number at 1-800-931-2424 (x651) during normal business hours (Monday-Friday, 8:00 AM – 5:00 PM, PST). When calling, please reference your loan number.

Sincerely,
Customer Care Department
FCI Lender Services

**FCI Lender Services, Inc.**

06/06/2017

*Loan Servicing* • *Specialty Servicing* • *Default*

Phone: 800-931-2424   Fax: 714-282-5775

## Privacy Policy

CHRISTOPHER J TABICK
89 BAY 23RD ST
BROOKLYN, NY 11214

**Dear CHRISTOPHER J TABICK:**

At FCI Lender Services and our family of companies, we appreciate your business and the trust you have placed in us. We are committed to protecting the personal data we obtain about you. Please know that we do not sell your personal data. Please review the following details.

**What personal data we may collect about you?**
We may collect personal data about you to process your payments and to communicate with you regarding the status of your loan and payments. When required, we will obtain your consent before collecting it. The personal data may include:

Name and Address
Credit & Payment Data
Social Security number or taxpayer identification number

**What do we do with your personal data?**
We comply with Federal and State requirements related to the protection and use of your data. This means we only share data where we are permitted or required to do so. We also may be required to obtain your authorization before disclosing certain types of personal data. We may use your data for the following:

Process Loan and Payments
Respond to your requests
Comply with regulatory requirements
Prevent Fraud

We do not sell personal data about current or former customers or their accounts. We do not share your personal data for marketing purposes with anyone outside our family of companies. When affiliates or outside companies perform a service on our behalf, we may share your personal data with them. We require them to protect your personal data, and we only permit them to use your personal data to perform these services. Examples of outside parties who may receive your data are:

State or Federal Authorities
Other companies or service providers supporting your account

**How do we protect your personal data?**
In order to protect your personal data, we maintain physical, electronic, and procedural safeguards. We review these safeguards regularly in keeping with technological advancements. We restrict access to your personal data. We also train our employees in the proper handling of your personal data.

**Our commitment to keeping you informed.**
We will send you a Privacy Policy each year while you are our customer. In the event we broaden our data sharing practices, we will send you a new policy.